[Crim. No. 14300.    Second Dist., Div. Five.    Jan. 9, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. HECTOR
DELGADO JUAREZ, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert T. Jacobs, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant was charged with two violations of section 11501 of the Health and Safety Code, which were alleged to have occurred on January 6 and January 12, 1967, respectively. Two prior narcotics felony convictions were also charged. Defendant pleaded not guilty and denied the priors. A jury found him guilty of having violated section 11500 of the Health and Safety Code on each count. The priors were found to be true. Defendant was sentenced to concurrent prison terms.

### The Offense of January 6, 1967

Officer Melendrez, a deputy sheriff, was engaged in an undercover narcotics investigation. Burton, an informer, was with him. Burton had known defendant for some time.

At 3:30 p.m. Burton introduced Melendrez to defendant. Burton asked defendant whether they could "score" a quarter of an ounce. Defendant got into Burton's vehicle and directed him to drive to Kalisher Street. After awhile one Ascencio came by. Defendant asked Ascencio if he knew where they could "score." Ascencio told the party to meet him at a certain corner. Later, at that corner, Ascencio handed Burton either two or three balloons. Melendrez gave Ascencio $55. En route back defendant asked Melendrez to show him what he had received. Melendrez did and defendant—with Melendrez' apparent assent—took one balloon from Melendrez' hand. Defendant was then let off.

### The Offense of January 12, 1967

On January 12 Melendrez was again with Burton. At about 1:20 p.m. they drove to the intersection of Kalisher and Hewitt where they saw defendant standing next to a car. Melendrez asked defendant for a half gram. Defendant got into Melendrez' car and directed the officer to a certain housing project in Van Nuys. After they arrived, defendant left for awhile and returned with a balloon which proved to contain heroin. Melendrez gave defendant $10 for the balloon.

### Defense

The sole defense was entrapment. Defendant admitted being an addict. He testified that he and Burton had frequently

taken heroin together before January 6, 1967. On that day Burton arrived with Melendrez and told defendant that he wanted to buy a "quarter." Defendant was suspicious of Melendrez but Burton allayed his fears. Defendant directed them to a pool hall which Burton entered. He returned and directed the car to the same corner in Van Nuys where, according to Melendrez, the transaction had taken place. There Burton again disappeared and returned with the narcotics. He directed Melendrez to give defendant one of the balloons. At the time defendant was "strung out."

On January 12 Melendrez and Burton again appeared and wanted narcotics. Defendant directed them "to the project" where he knew he could obtain narcotics. After they arrived there Burton gave defendant $20 which he used to buy an unspecified number of balloons. Again Melendrez gave defendant one of the balloons.

On January 6 Burton had said that he was "sick" and "he had to have it."[1] Neither on January 6 nor on January 12 was it defendant's idea to sell, give away or furnish narcotics. He merely wanted to help out a fellow addict. On cross-examination defendant admitted that he participated in the transactions in order to get heroin for himself in spite of the fact that he suspected that Melendrez was a policeman.

Ascencio was a codefendant at defendant's trial. His defense was an alibi. The jury was unable to reach a verdict with respect to him.

### Discussion

The People did not offer any evidence of defendant's possession of heroin on January 6, after the completion of the sale to Melendrez. Initially, their entire theory was that defendant aided and abetted the sale by Ascensio. Indeed the People could not have justified a conviction based on defendant's possession after the completed sale to Melendrez, for although it has been held that possession is a lesser offense, included in a violation of section 11501 of the Health and Safety Code (*People* v. *Rosales,* 226 Cal.App.2d 588, 591-592 [38 Cal.Rptr. 329]; cf. *People* v. *Blunt,* 241 Cal.App.2d 200, 203-204 [50 Cal.Rptr. 440]), the defendant's possession of heroin acquired after the completed sale simply was not charged in the information.[2] This much is conceded by the

---

[1]Burton, who testified, claimed to have been a former addict who had become cured. He worked as an informer solely for "gas money."

[2]The information specifically charged that defendant did "sell, furnish and give away a narcotic, to wit, heroin." This obviously excludes any possession of heroin furnished and given *to* the defendant.

People.[3] Yet we are morally certain that the verdict finding defendant guilty of possession on January 6 is not based on anything that took place before the completed sale. but on the possession obtained thereafter. The court had instructed the jury that possession of heroin was necessarily included in the charge of selling heroin.[4] Most likely, when some jurors entertained a reasonable doubt concerning the identity of the seller, the jury as a whole felt—erroneously of course—that it could not very well convict Juarez of aiding and abetting the sale. So the jury took what seemed an easy way out and convicted defendant of what it had been advised was a lesser included offense, indeed one which had been admitted on the stand. No one had instructed the jury that it could not base its verdict on the post-sale possession. On the contrary, the district attorney in his summing up practically invited it to do so.[5]

It is also possible that the jury felt that the defense of entrapment was made out as to Juarez' assistance in the sale, but not as to his possession thereafter. Either way, without a specific instruction to the jury concerning the post-sale possession, we do not believe that the judgment can stand as to count I.

■ Defense counsel submits that the officer's act of giving Juarez heroin on January 6 also vitiates the conviction on count II. He characterizes the furnishing of heroin on the first occasion as ''entrapment'' and argues that it tainted the transaction on January 12.

---

[3]The evidence of defendant's post-sale possession was developed by the defense during cross-examination of Melendrez and again when defendant testified. Presumably it was felt that it somehow strengthened the defense of entrapment.

[4]This instruction was probably not quite correct. Strictly speaking a sale of heroin can probably be accomplished without actual possession, actual or constructive. This is not true, however, of ''furnishing'' or ''giving away'' the narcotic.

[5]''The defendant Juarez is charged with the sale of heroin. *He admitted on the sale* [stand?] *that he possessed heroin on the first time* and he said he got some from Burton—those were his very words and the second time he got some from Burton or the officer—so he has admitted that he was in possession of heroin. Now, in order to commit the crime of sale of heroin you have to necessarily possess heroin before you can sell it. So that is why it is an included offense, and that is why it is a lesser offense. It is included in the sale of heroin.'' (Italics ours.) Earlier in his argument he had said: ''. . . Even Mr. Juarez said he got some heroin at the time on [*sic*] those two transactions.'' We might add that Juarez did not testify that on January 6 he received the heroin from Burton. He said that Burton told Melendrez to give him one balloon.

Whatever label one gives to a policeman's *in specie* payoff after a narcotics sale, it is not an edifying spectacle, though perhaps only slightly worse than payoffs in legal tender where the purpose to which the money will be put is all too obvious. If Juarez, at the time of the January 6 transaction, had not already been addicted to heroin we might be faced with a real problem. (Compare the facts with *Sherman* v. *United States,* 356 U.S 369 [2 L.Ed.2d 848, 78 S.Ct. 819].) Since, however, he was already so addicted, we certainly cannot say that furnishing him with the narcotic on January 6 was necessarily the cause of his later compliance with the officer's request for heroin on January 12.

The judgment is reversed as to count I and affirmed as to count II.

Stephens, J., and Aiso, J., concurred.

A petition for a rehearing was denied January 29, 1969, and appellant's petition for a hearing by the Supreme Court was denied March 5, 1969. Peters, J., was of the opinion that the petition should be granted.